FILED

JAN - 3 2023

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
         DEPUTY CLERK

**THOMAS J. ZITO**
**7065 WARBLER WAY**
**SACRAMENTO, CA 95831**
**TELEPHONE: 916 422 7105**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

**THOMAS J. ZITO**

      **Plaintiff**

**Case No.** 2:23 - CV 0 0 0 4 - KJM  AC  PS

**THE PURPOSE OF THIS DOCUMENT
IS TO ISSUE A COMPLAINT, WITH
SUPPORTING EVIDENCE, AGAINST
THE NAMED DEFENDANTS, AND TO
SEEK REDRESS FOR PUNITIVE
DAMAGES**

      **v.**

**SEAN K. COLLINS &**
**WILLIAM A, GOTTLIEB**

      **Defendants**

**Attachment !**         **Case No:**

**<u>Defendants</u>**

**Sean K. Collins**
**Law Offices of Sean K. Collins**
**184 High Street**
**Suite 503**
**Boston, MA 02110 – 3027**


**William A. Gottlieb**
**Assistant Vice President**
**John Hancock Life Insurance Company (U.S.A.)**
**PO Box 111**
**Boston, MA 02117 – 0111**

**Case No.:**                                    **Attachment 1**

## COMPLAINT

**THERE IS QUESTIONABLE CONDUCT ON THE PART OF THE DEFENDANTS IN THEIR ATTEMPTS TO RESOLVE THE ISSUES RELATIVE TO THE PLAINTIFF'S LATE WIFE'S LONG-TERM INSURANCE POLICY ISSUED BY JOHN HANCOCK FINANCIAL SERVICES, INC. IN THE YEAR 2000.***

**\*The Insurer has since changed its fictional name a number of times.**

**Date:** 1\03\23

**By** _____ Pro Se

Thomas J. Zito, Pro Se

Thomas J. Zito, Pro Se

Attachment  *1 B*

Case No._____

## JURISDICTION

The appropriate venue for this lawsuit is Federal Court, Eastern District of California, pursuant to diversity (the Plaintiff and Defendants are citizens of different states) and the amount of damages sought (the damages I seek are in excess of $75,000.00).

**Thomas J. Zito, Pro Se**          **Attachment** 2

**Case No.:**_____

**The Letter of Agreement between Mr. Collins and me is attached. In the first substantive paragraph, "Scope of Representation," there is the message that Mr. Collins will not pursue the "theory" which I have offered. This, essentially, is: Read the Contract.**

**In retrospect, one can reasonably state that this stipulation is made to put Hancock (Mr. Gottlieb) at ease. Any prospective resolution will not acknowledge any significant alteration of the original Policy. Had I understood Mr. Collins's intention at the time. I would have insisted on the removal of this condition.**

**At this point, we have the beginning of the Defendant Collins's collusion with Hancock (the Defendant, Mr. Gottlieb).**

## Law Offices of Sean K. Collins

The undersigned ("Client" or "I"), hereby employs the Law Offices of Sean K. Collins, located at 184 High Street, Suite 503, Boston, MA, 02110 ("Attorney" or "Firm" hereinafter) to represent the interests of Client Renee Zito through her power of attorney, husband Thomas J. Zito, in connection with John Hancock ("Insurance Company") long term care insurance policy on a contingency fee and cost basis, as fully described below.

### 1. SCOPE OF REPRESENTATION

The Attorney will represent Client regarding the Insurance Company's refusal to interpret the policy as an "indemnity" contract as opposed to a "reimbursement" contract with respect to the assisted living facility benefit. The Attorney will investigate the claim, and attempt to secure a favorable resolution by serving a demand letter and/or filing suit. The Attorney will not pursue the claim theory proffered by the Client that the inflation protection rider added to the policy converts a reimbursement policy into an indemnity policy.

The scope of the representation is limited to: (1) investigating the claim; (2) trying to secure a settlement from Insurance Company; and (3) filing a civil suit, if deemed appropriate at the sole discretion of Attorney.

### 2. FEE FOR LEGAL SERVICES

If Attorney is successful in obtaining a recovery for Client (by claim decision, judgment, settlement, compromise or otherwise) Client shall pay to Attorney contingency fee of 28.33% of the total gross recovery sum (including any future insurance benefits paid if Client is placed on claim by Insurance Company) before deduction of expenses. The total gross recovery sum noted above does not include an award of attorney fees paid to you, whether by judgment, settlement or compromise. The total gross recovery sum, for purposes of calculating the contingency fee, shall not include amounts paid by the Insurance Company as reimbursement for Client's out-of-pocket expenses, it shall only include amounts recovered over and above this amount, unless, Insurance Company also challenges Client's eligibility for reimbursement benefits.

Any monies paid by Insurance Company specifically as attorney's fees will be property of the Firm but will reduce the contingency fee you owe the Firm dollar for each dollar awarded, but shall not reduce the contingency fee payable in the prior paragraph to less than 10% of the judgment, settlement or compromise.

In the event a judgment is entered in your favor, and Insurance Company appeals the decision to an Appellate Court, the Attorney may continue to represent you during the appeal process. If the Attorney represents you during the appeal process and you prevail by judgment or settlement, our fee will be 40% of the gross recovery sum plus one hundred percent (100%) of any attorneys' fees paid by the Insurance Company as a result of either a court award or a settlement. In the event that judgment is entered in favor of the Insurance Company in the trial court, Attorney shall not be obligated to prosecute an appeal and will not be owed any compensation if an appeal is not pursued. If an appeal is pursued, our fee will be 40% of the gross recovery sum plus one hundred percent (100%) of any attorneys' fees paid by the Insurance Company as a result of either a court award or a settlement.

If Client prevails in litigation, Attorney shall apply (if statute or common law permits) to the court for a further award of attorney fees (to the extent that Client does not waive such further award, pursuant to the terms of any settlement agreement) to be paid by the Insurance Company. Attorney reserves the right to apply to the Court for an amount of attorneys' fees equal to his customary hourly rate multiplied by the number of hours expended on the case, as well as the right to apply to the Court for an upward adjustment of such fee (a "multiplier") if circumstances warrant it.

Client acknowledges and understands that any such award of attorneys' fees by the Court is discretionary as to the amount awarded, and that there is no guarantee that attorney fees of any amount will be awarded by the court. The entire amount of any such court ordered award of attorney fees shall be paid directly to Attorneys; and the entire amount thereof shall be regarded as earned by the Attorneys when received.

If at any time Client discharges Attorney prior to the conclusion of the claim, without the agreement of Attorney, Client agrees Attorney may assert a lien on the claim for their time at their usual hourly rate. Whether the Attorney will receive payment for the work done prior to termination, and the amount of the payment will depend on the benefit to the Client of the services performed as well as the timing and circumstances of the termination. The payment shall not exceed the lesser of (i) the fair value of the legal services rendered by Attorney, or (ii) the contingent fee to which the Attorney would have been entitled upon the occurrence of the contingency.

Client grants to the Attorney a limited power of attorney to endorse on Client's behalf any payments and to deposit same into an IOLTA trust account. Client further grants to the Attorney permission to deduct any applicable attorney's fees and/or expenses from same and to disburse the applicable balance to Client.

This agreement and its performance are subject to Rule 1.5 of the Supreme Judicial Court of Massachusetts which governs the reasonableness of fees that Attorneys may charge clients.

**3. REIMBURSEMENT FOR EXPENSES:**

The Attorney may incur various reasonable and pertinent costs and disbursement in performing legal services under this Agreement. Client agrees to pay for all costs and disbursements paid for or owed by the Attorney from Client's percentage share of any recovery as calculated pursuant to paragraph 2 above. If there is no recovery, Client is not required to reimburse Attorney.

Costs and disbursements commonly include court fees, jury fees, service of process charges, court and deposition reporters' fees, photocopying and reproduction costs, messenger and other delivery fees, postage, travel costs (including parking, mileage, transportation, meals and hotel costs), investigation expenses, consultant, expert witness, doctors, arbitrator and/or special master fees and other similar items.

2

Cost of each expense will be disclosed by Attorney to Client within a reasonable time after the need for the expense is known. Expenses of cost greater than $100 will be disclosed to client prior to incurring the said expense.

## 4. CLIENT COOPERATION

Client understands that Client's active participation is crucial to obtaining a favorable result and is a requirement of this Agreement. For example, Client understands that Client must cooperate with Attorney in: (a) providing documentation and other information; (b) completing or assisting Attorney as requested with document requests, interrogatories, admissions, etc. Finally, Client understands that Client must remain in contact with Attorney. If Client is out of contact with Attorney, or fails to respond to attempts by Attorney to contact Client within a reasonable time (which is normally 10 days, but may be less if a deadline is approaching), then Client authorizes Attorney to take such action as Attorney deems appropriate and in Client's best interest.

## 5. GENERAL PROVISIONS

Each dispute arising under or in connection with this Agreement, which the parties cannot resolve amongst themselves, may be determined through the Massachusetts Bar Association Legal Fee Arbitration Board, at Boston, Massachusetts and such decision shall be final and enforceable in a court of competent jurisdiction.

In general, Attorney scans all documents and shreds documents after scanning, unless an original document has independent significance. Attorney maintains client files for 6 years after this matter is concluded. Client may request the file at any time during the representation, or after the representation ends. However, six (6) years after the conclusion of this matter, the file may be destroyed without further notice to Client.

Client understands that Attorney cannot guarantee a favorable result. This Agreement may only be modified in writing and by agreement of all parties and delivered to each other. All parties intend to be bound by the Electronic Signatures in Global and National Commerce Act (17 U.S.C. § 7001 et seq.) and that by affixing a signature to this document and delivering the document to the other party by email or fax or otherwise over the internet, all parties intend to be bound by this Agreement, and this Agreement shall be enforceable as if signed by pen to paper. All parties to this agreement acknowledge receiving a fully executed copy.

If the foregoing conforms to your understanding of our agreement, kindly sign where indicated below.

3

Case No:                                    Attachment_____

## BACKGROUND & HISTORY

This section is longer than planned. Yet, I see it as necessarily so, in order to present a complex situation. Not only does it present the Defendants' principal goal and purpose of their collusion, but it also enhances the understanding of the redress I seek, namely, one million dollars ($1,000.000).

I will first address the question of their goal. Their aim was to pay me the monies due me (as a legitimate successor and surrogate for my late wife) under the actual Daily Benefit existent in my wife's long-term care (LTC) policy with Hancock (for the sake of brevity I will use this label for the Insurer throughout this discourse). Far more important, they sought to achieve this without acknowledging any deviation from this policy/contract. Their contention is that their policy is a reimbursement policy (only invoices from a facility are paid) and not an indemnity policy (which they never define). This has been an iterative defense for years. In effect, the Defendants are in a corner, with little room to maneuver, Hancock cannot prove that any evidence I have can be legitimately refuted. Their defense is based on the LTC policy text being illicitly interpreted. Mendacity is their game. If they can deny that they offered an "endorsement" to the policy which provides an inflation protection rate of 5% compounded annually, they would. And they have done so. All the time.

The ultimate goal of Hancock is to keep in place a very systematic, well-planned approach to dealing with customers (the term Hancock prefers). It starts with their "specialists," who immediately narrow the initial contact to accurate presentation of invoices. Ab ovo, there is no selection of a compounded inflation protection as part of the policy.

2.                                    Case No.:

To illustrate the impact 0f the inflation endorsement (option), my wife's Daily Benefit in the year 2000 was $200.00; at the time of her death in 2020, her daily benefit was about $532.00.

Although Hancock no longer offers long-term care insurance (with the exception of federal government employees, mostly centering on retirement), the most frequently cited figure relative to remaining long-term care customers is around one million (in 2016, when LTC insurance was discontinued). If a modest guess of 50% chose the compounded inflation option, the cost to Hancock would be considered prodigious,

With remaining customers likely to be intimidated by the powerful, looming insurance company, one would surmise that resistance to being defrauded would be considerably limited. This would not be a surprise if one considered that LTC coverage is being managed by relations – sons and daughters, spouses et al. – under great pressure to have their loved ones secure as they pass into phases of increasing dependance. Sponsoring the Boston Marathon doesn't quite wash away the stains of greed and profit at any price.

I do not think that being lachrymose is superior to presenting the facts. Understandably, my experience with Hancock was fraught with anxiety, concern and frustration, particularly when my wife was still alive. <u>Beginning</u> in early April of the year 2020, there was an on-going and acerbic exchange of correspondence which resolved nothing. During this period, Hancock resorted to a number of tactics that were equally unproductive: letters to my wife which claimed cancelation of her policy; reimbursement theory sent me by the NY State Department of <u>Insurance</u> ; even dealing with the assisted living facility as party to the LTC policy itself. An orgy of collective insanity.

3.                                        Case No.:

Hancock's strategy, until a recent change, was based on the charge that my wife's policy was a reimbursement policy. This attempt to confound was based on the strange assertion that a 5% inflation protection option never existed. Hancock even had a doctored contract to prove this (feebly and maladroitly).  To be perfectly clear, a reimbursement policy meant that Hancock's contractual obligation was limited to paying only for the invoices from my wife's assisted living facility. This was an alleged payment of about $4,000, monthly. The actual obligation was about $15,000.00 monthly.  The New York State DFS, Hancock's regulatory body, was endowed with more predation than it was with cunning. More on this below. At this point, I will just comment that, for about twenty years, my wife had been paying premiums for this non-existent 5% compounded inflation protection.

Shortly before my wife's death in September of 2020, I entered into an agreement with the Law Offices of Sean K. Collins to represent me in this matter on a contingency basis. A copy of this agreement is attached. One must remember that most of what I learned about LTC insurance, and also about the Defendants, was done so incrementally. Among other things, it was a tutorial on gas-lighting.

As one can read in the agreement with Mr. Collins (first paragraph, Scope of Representation), he was already preparing for what might be a lawsuit against Hancock. Unfortunately, he was not planning for me, the Client, but for his own monetary gain. The language here is an awkward representation of my position. Barring the possibility of a class-action suit (Mr. Collins was experienced and well paid for his efforts in this sphere of practice}, he was manifesting to Hancock his assurance that the Policy per se would not be altered in any significant way, that they could continue to fleece their customers.

4.                                              Case No.:

As far back as early September of 2020, Mr. Collins was formulating his back-up position (class-action was apparently his preference). He and Mr. Gottlieb (or whoever was the liar du jour) would cooperate on identifying a method by which this could be achieved.

To be more precise, Mr. Collins was keeping his options open. Admittedly somewhat reductive, any legitimate profile of Mr. Collins as an attorney would require one's following the money. Venality is one touchstone of Mr. Collins's legal mode. This cluster of traits arises from a very reasoned judgment, empirically confirmed over time.

Mr. Collins's acceptance of me as a client should have been the first indication of the difficulties to follow. Mr. Collins is not one to accept such paltry cases as mine. He is more inclined to use a rather impecunious offering as a springboard to richer financial rewards. As I noted above, if one is to understand Mr. Collins in his professional role, just track the trail of dollar signs.

For about a full year, nothing was really accomplished except for my increasing unease. I was mostly used as the contact with Greenhaven Place, my wife's assisted living facility. My role was to obtain and pass on to Mr. Collins past invoices and checks (covering expenses under a reimbursement conception), I had no idea of what Mr. Collins was doing. At the same time, there was considerable anxiety and uncertainty on my part. I had informed Mr. Collins of my financial vulnerability, the question of my age (I was eighty-eight in November of 2021), the threat of statutory limitations, et al.

**5.**                              **Case No.:**

When, at my insistence, we began to prepare for filing a lawsuit against Hancock, there was no abatement of the pressures I felt. Here is a quite representative review of how Mr. Collins interpreted the evidence I deemed as quite reliable and of high validity.

The original contract, Mr. Collins argued, was a reimbursement policy. In other words, he was on the same page as Hancock. This was an outright lie. This was the essence of our fiduciary bond being rather casually dismissed.

I was "making too much" of Hancock management's booklet (which confirmed all of the content of the original policy, including the 5% inflation protection option.) If I recall correctly, in 2014 the Daily Benefit exceeded $400.00. This was, in my judgment, the most convincing shard of evidence we had, trailing only the original Policy. Mr. Collins just brushed it off with insouciance. He provided no reason(s) for my "making too much" of it.

The Overview of Coverage, according to Mr. Collins, gave more substance to Hancock's position. Why? No response. As if we were interpreting metaphysical dogma. It also reflected the dismissive vein of his view of me. I'm quite sure that he passed it on to Mr. Gottlieb. I can manage the dumb old guy. It's in the bag. No worries there.

Maybe.

My personal favorite deals with the doctored contract Hancock issued (and which DFS never noticed). The reason they did so was that the critical Application Section (wherein my wife put her John Hancock to the acceptance of the inflation protection right there on the front

6.                              Case No.:

page) made the Policy look/sound too much like an indemnity policy. So, they just eliminated it to protect the customer's "confidentiality." This is like taking a pathetic explanation and cosmeticizing it with an even poorer imagination.

I explicitly summarize the above because of the impact these had on me. Not only were we making a turnstile of the proverbial looking glass, but I researched matters again to insure their validity. I thought that I knew the general direction of where they were going and that the pressure and concern had neared their maximal level. I guessed wrong.

Mr. Collins (and, I assume, Mr. Gottlieb) had reached a stage of near panic when I suggested that a draft of the Complaint that was intended for the Court was ludicrously inept and unintelligible, particularly Mr. Gottlieb's (I assume, with good reason) inserting the actual terms and conditions of my wife's policy in microscopic foot-notes. This leads one to believe that Mr. Gottlieb is not quite the river-boat gambler I find in Mr. Collins. It was a grossly mishandled task, with Mr. Collins and Mr. Gottlieb waltzing, each to his own tune.

I use the term "panic" quite literally. Previously, we had discussed the option of giving my nephew, an engineer with Microsoft, a limited power of attorney to act as my replacement should I succumb to the rigors of time. Mr. Collins suggested that he work with my nephew to bring this project to fruition. A touch of madness, signaling a loss of control by Mr. Collins.

The questionable strategy worked out by the Defendants was to make underpayment to my wife a miscalculation. The latter is to be defined

7.                                            Case No.:

as an error in arithmetic, not at all a bit of deft and cunning. Ostensibly, I would have no voice in playing out this farce which gave off the scent of felony in its presenting a web of lies to a federal court.

All of this is prologue to my acting pro se. Clearly, the likelihood of my finding another attorney, one willing to accept me as a client on a contingency basis, was virtually nil. The entire situation shifted to my working alone, with a daunting burden intrinsic to my not having the least idea of how to manage the demands of initiating and working through the hurdles to be faced in filing a civil lawsuit.

Although individuals representing themselves are given great latitude by the courts, the exigencies which arise are still challenging and difficult enough to cause considerable trepidation. Anyone assuming self-representation can attest to the daunting sense invested in each step. This is a complex undertaking, with everything researched. And, then, researched again. One is bedeviled by the interplay of federal and local rules and codes. What does "cognizable" mean. Or "plausible." I have a preponderance of evidence; isn't that sufficient? Why do have to fool around with evincing from the rubble aspects of law which eventually identify a legal theory?

If I rise from this muck, the opponents' attorneys pester with cries of dismissal, based on procedural omissions. Where's justice in all of this?

I existed in corridors that soon became a maze. I do not recommend this to the sleep-deprived. It was a dreary and burdensome journey.

It is not melodrama to add that this is/was not what I anticipated doing in the last years of my life. There was so much restructuring to accomplish, so much to reflect on. Sisyphus comes to mind.

I have added some attachments which I trust will support some of the key points I have made. Cover sheets will, I hope, lend a frame for understanding .

It's important to me to present some of the relevant information that will be derived through discovery:

> - How and to what extent was Mr. Collins rewarded for his congeniality with Mr. Gottlieb and Hancock/ Manulife?
> - Does Mr. Collins have a relative who is employed as an attorney by Hancock?
> - There are some documents which I require, such as the draft of the Complaint executed, likely by both Defendants.

Another matter of significance is the activity of the supposed regulatory body, the New York State Department of Financial Services (DFS). This is an illegal and illicit relationship whereby DFS is less a regulator than it is a facilitator for Hancock. There was a minor tempest when DFS approved an increase in premiums for LTC insurance issued by Hancock. As I have stated elsewhere, Darwin had his bulldog. so why not Hancock?

Both Defendants, as attorneys, are considered officers of the Court. Both are aware of the iniquity which underlies the nexus of Hancock and DFS.

9.                                    Case No.:

Neither Defendant has reported this to the appropriate authority.

Mr. Gottlieb has/had under his areas of responsibility with Hancock, the oversight of regulatory compliance. It should be absorbing to discuss these associations with Mr. Gottlieb.

I approach these matters with legal theory which manifests the conduct/misconduct of attorneys. The moral/ethical standards by which they are measured are established by the State Bar of California. California has not adopted the rules of the U.S. Bar Association. At the same time, it acknowledges the derivation of its standards from the U.S. Bar. The latter are referred to as the "Models" of attorney conduct.

I should note that I explored this situation as comprehending the elements of fraud. Research informed me that fraud requires belief in the lie(s) put forth by the alleged perpetrator. I don't think that I ever believed the Defendant's lies. As time went by, my interests turned to speculation on what their strategy would be.

It barely moved the seismic needle on professionalism.


Dated_____

                                    By_____
                                      Thomas J. Zito. Pro Se

Thomas J. Zito, Pro Se

Attachment_____4_____
Case No.:_____

## LEGAL THEORY

As a layman, acting Pro Se, the legal theory applied to our Complaint was initially limited to attorney conduct and all relevant material subsumed under this aspect of the law.

As I continued researching attorney conduct/misconduct, there began to emerge a distinctly more comprehensive view of these issues. One might generally describe this molar approach as a systematic but ever-changing effort to represent the functions of the judiciary branch of government in the State of California, with the California Supreme Court being the primary actor. At one level, then, we can approach this effort as one which asserts the separation of the Judiciary from the Legislative and Administrative branches. The Supreme Court is establishing itself as the sole arbiter in regulating every aspect which falls within its purview, perhaps mostly in matters of its integrity and devotion to ethical and moral standards. The stress on ethical behavior cannot be overstated.

The professed mission of the Supreme Court of California is to protect the public, to protect the integrity of the legal system and the administration of justice. Another principal goal is to build confidence in the system among the citizens of the State.

The California Supreme Court reserves for itself the power to approve or disapprove virtually every event that occurs within the system. It delegates to appropriate bodies the oversight of compliance with the law. Chief among these is the State of California Bar. The California

State Bar has not officially adopted the various codes and rules of the American Bar Association but acknowledges that its own rules are largely derived from the ABA's doctrine. Its conformity to what are called the ABA's Model Rules is extremely high.

I used the term "ever changing" with respect to the rules of the system in the State. The rules of professional conduct (to approach more closely our primary interest) are extremely open to change in the form of case law, the Opinions expressed by the courts. and by what is described as the Committees on ethical issues, although this last source is not one which is binding. There is also a Commission for the Revision of the Rules of Professional Conduct.  In sum, the California Judiciary system is open and dynamic.

With this admittedly truncated view of the California Judicial System, we will turn to the activities of the Defendants and their transgressions of the binding rules of the State Bar (with this term used in an inclusive manner).

What should be added to this prologue is that the State Bar's Rules of Professional Conduct are mainly derived from the California Business and Professions Codes, sections 6000 et seq. and from the Opinions of California courts. Within this frame, licensed California attorneys are considered Officers of the legal system and also public citizens who have special responsibilities for the quality of justice.

The following list of the Defendants' infractions of relevant codes, rules and laws are considered, in our judgment, to be among their foremost transgressions.

The <u>standards</u> by which I evaluate the Defendants' conduct are mostly derived from the California Business and Professions Code. In this, I follow the assessments of the State Bar. For the sake of brevity, we will refer to the relevant codes as BPC. Updated annually, these codes are generally described as the State Bar Act.

Commented [TZ1]:

### BPC 6001
This section asserts that the highest priority of the Board of Trustees is the protection of the public.
The actions of the Defendants are diametrically opposed to this. What their collusion essentially furthers is the on-going and systematic abuse of Hancock's LTC customers.

### ABA Model Rule 8.4
This is a refinement and compression of BPC rule 1-120 by the Commission for the Revision of the Rules of Professional Conduct ("Commission"). Herein, the Commission invokes the term "moral turpitude," which is subsequently used as referring to any attorney's misconduct exhibiting deceit, deception or corruption. The specific abuse of the Defendants consists in their violation of the Rule's prohibition of knowingly "assisting in, soliciting or inducing " a violation of the State Bar Act. Their Complaint, with its mendacious account of why there was underpayment of my late wife's benefits, constitutes a mistruth to the Court (usually termed as a "fraud on the Court"). Their plan implies that the Plaintiff agrees with their false statement. Clearly, there is the reasonable conjecture that they had no intention of informing the Plaintiff of this misconduct as a violation of the law.

### BPC Rule 1.3
This rule addresses the issue of "Diligence." Taking a year to initiate advancement of the Plaintiff's claim can reasonably be termed a lack

of diligence on the part of Defendant Collins. Other than as an object used to achieve Hancock's goals, the Plaintiff seems to be given no status at all which is of any consequence. This implicates both defendants.

BPC Rule 1.8.6
The rule addresses the compensation given an attorney by someone other than his/her client. The violation of this rule is critical. We can reasonably and logically infer that Hancock (via Mr. Gottlieb) provides some form of consideration for Mr. Collins's role in their behalf. This is particularly offensive.

BPC Rule 1.6
This rule relates to the act of confidentiality granted the client. Clearly, this carries little weight with either officer of the legal system. The Defendants cannot reasonably proceed without Mr. Collins revealing several aspects of the life of his client (e.g., financial vulnerability). The key revelation, a very basic factor for the Defendants, is that Mr. Collins has to assure Mr. Gottlieb that the Plaintiff is no problem; he can be "managed,"

BPC Rule 3.3
This rule enhances the importance of Attorney-Client confidentiality and, more important, the element of "candor to the tribunal." California had been the only state not to follow the ABA's Model Rule 3.3. This adoption by the Commission brings California's position into greater alignment with the ABA's Model Rule 3,3. The Defendants' strategy cannot be executed without compromising on candor to the Tribunal. Mendacity is at the core of their plans. Ethical behavior is again the resounding factor.

We do not find a code or rule which precisely reflects the Defendants' goals with respect to our own situation. Yet, there can be no question

that their collusion distinctly violates a significant number of the State Bar's rules of professional responsibility and ethical rectitude. We see their planning as a particularly objectionable act of self-dealing. California BPC 6128 approaches a generic description of the Defendants' transgressions. This Code proscribes any "deceit or collusion" which is intended willfully to temporize with the Client's suit for their own gain. BPC 6128 (a) and (b) even refer to monies for which the Attorney(s) are not answerable. The "deceit" is all-encompassing: It includes the intent willfully "to deceive the court or any party."

The various Codes exist, in the California Supreme Court's view, for purposes of discipline. Their essential components are given the values of protecting the Client and demanding that this and all matters of Attorney activity be done with the highest level of moral and ethical principle. The California State Bar places greater importance on protecting the Client than does the national ABA standards of professional conduct. Otherwise, as noted, there is a high degree of similarity between the two sources.

There are a number of ways to select and define the ethical principles I have been alluding to within the perspective of legal theory. I find that the principles themselves conform to expectation. We have the usual tenets: honesty, trustworthiness, loyalty, respect for others et al. I could be reading from a Boy Scout Manual. The standards that have genuine ties to reality are difficult to pin down. In the California legal system, there is the pragmatic inclination to leave the resolution of ethics to case law. This is where attorneys must look for guidance. This makes the field of ethics one which is action-based.  Virtue is found in the ethical act.

The insistence on ethics fusing with practice appears to underlie the desire to make the legal system as pristine as reality will allow. I am

impressed by the fact that the California State Bar Office of Professional Competence publishes and sells to the public a Compendium i of Professional Responsibility. This consists of the ethics opinions of several county Bar associations in California. If I recall correctly, the last edition of this annual publication was more than 450 pages on length. The doomsday pronouncement of the publication is the dreaded phrase "Moral Turpitude."

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | | |
|---|---|---|
| Thomas J. Zito | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No. |
| Sean K. Collins | ) | |
| William A. Gottlieb | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

Sean K. Collins
Law Offices of Sean k. Collins
184 High Street
Suite 503
Boston, MA 02110-3027

William A. Gottlieb
Assistant Vice President
John Hancock Life Insurance Company (U.S.A.)
PO Box 111
Boston, MA 02117-0111

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Thomas J. Zito
7065 Warbler Way
Sacramento, CA 95831

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

Thomas J. Zito, pro se                    Attachment: 5 ff

                                          Case No._____

The August 9, 2021 email  (the writer to Mr. Collins) is my rejection of
his draft copy of a Complaint. It is essentially a termination of our
Agreement. It causes Mr. Collins to resign.

At the same time, in his email of August 11, 2021 to the writer, he
manifests the "panic" which I alluded to in the attached
Background/History document. Despite his termination of our
Agreement, he suggests that he proceed with my nephew substituting
for me under a limited power of attorney agreement. One can easily
detect his fear that his and Mr. Gottlieb's approach is now dissipated.

A reasonable inference is the assumption of some factors: He knows
the possibility of his position may be revealed as quite illicit; he, in my
judgment, is concerned that he has failed Hancock and the
compensation he's received will be rescinded under the worst of
conditions.

If I were he, I'd also panic.

Like a Bad Dream

From:Thomas J. Zito (nytomzito@att.net)

To:sean@neinsurancelaw.com

Date:Monday, August 9, 2021, 06:23 PM PDT

Sean:

I would rather have done this by phone, the closest we have to a face-to-face.

I really am desperate about putting all of this behind me. It has stolen too much time from me, when I know I have not a great deal of time left.

I see no reason not to plunge ahead; this is it.

It's ironic that the last person I researched was Bill Gottlieb. I even read through his real estate interrogation. Didn't miss much. I knew how things were moving toward a climactic resolution. I never believed you would take my miniscule case as anything but a launching pad. Too much time wasted here as well.

There's so much to relate, but my recitation will be short.

It, of course, was one of Gottlieb's legal responsibilities to be the senior counsel for regulatory compliance. Here I was, assuming Bill was being euchered, when he had DFS as his go-to team. All came together for me. No great achievement. I should have anticipated it.

A slight digression. Don't ever rely on Gottlieb's editing. The Complaint draft papers were a disgrace. Everything was in the footnights or compressed typeface. Too much to deal with, because everything was equivocation. Strange, obsessive cant with fixity and stasis the only element to penetrate. Only the initial fixed limit of $200.00 alluded to. Reimbusement policies that somehow had no terminal point. Bill truly sounds unhinged.

The key certainly was the perfect way out for Hancock. Their crime was, of all things, miscalculating. They get their hand slapped; you get rewarded well, I assume. I get paid what's due me.

You made a couple of very questionable decisions in this matter. First of all, as an officer of the Court, you're obliged to report on the criminal arrangement between Hancock and DFS. Instead, you sleep with the enemy.

Your working with Gottlieb reveals a mutual back-rubbing. You rupture the fiducary bond between yourself and your client, namely, me.

I don't know if these factors constitute grounds for disbarment. I really don't want to go there. I do, however, hear the clinking of silver coins.

You're fortunate, I think, in my just wanting out of all this.

Please don't reply just yet. I'd like you to tell Gottlieb what I want. Before we get into that, let me just tell you that I have a very long email which describes my journey among the sharks. There is also an annotated copy of the Complaint draft. If anyting untoward occurs, I or my backups will go to Letitia James. Sorry, but that's real nasty stuff. Normally, I don't do nasty. But Hancock gives nothing to the world. nothing of value.

This is what I want, and its performance will earn Hancock a non-disclosure agreement from me.

Time, as i said, is of great importance to me. I want eye surgery so that I can read befor I die. Consternation arises when I think of Hancock's willingness to do anything to achieve its goals. I state this so that you're aware of my motivation in these actions.

RE: Like a Bad Dream

From:Sean Collins (sean@neinsurancelaw.com)

To:nytomzito@att.net; vmisteller@mintz.com

Date:Wednesday, August 11, 2021, 09:10 AM PDT

Tom and Victor,

I have not heard back from either of you after multiple emails and phone calls to both of you.

Effectively immediately I am terminating the fee agreement dated September 4, 2020 given Tom's allegations against me in the below email. In addition we have yet to enter a fee agreement on behalf of the Zito Family Trust (which we would have needed to do prior to initiating litigation). As of this writing, I no longer represent Tom Zito in any capacity. I also no longer represent the Zito Family Trust or the Estate of Renee Zito in any capacity, express or implied.

I will not place any kind of lien on the claim for the dozens of hours I have spent working on this matter to date, including reinstatement of Mrs. Zito's lapsed policy, recovery of the $17K in funds (from which I took no fee) and drafting the complaint (attached) against Hancock.

I suggest that Tom finds another attorney immediately if he intends to pursue John Hancock given that all claims have applicable statutes of limitations and Mrs. Zito entered Greenhaven Place in September of 2019.

If Tom provides his nephew with a power of attorney covering himself and the Zito Family Trust in order to pursue Hancock, I would be willing to entertain engagement again solely at the nephew's direction.

The arrangement whereby Tom is in charge of the Zito Family Trust is not workable as I am concerned about Tom's capacity to pursue Hancock in litigation as the sole trustee of the Zito Family Trust given his allegations against me personally.

Thank you,

Sean K. Collins

Law Offices of Sean K. Collins

184 High Street, Suite 503

Thomas J. Zito, Pro Se                Attachment __5 B_____
                                      Case No._____

In the attached email copy, Mr. Collins continues his tactic of agreeing with the Defendant. He makes the odd statement that inflation protection isn't incompatible with a reimbursement policy. How peculiar, like saying the world is a sphere. The importance of this matter inheres in the fact that the 5% compounded inflation protection increases the Daily Benefit in a manner that makes it appear as if annual increases are exponential.

This is Mr. Collins at his best, lying and assuming his audience is made up of a dunce, namely, me.

What challenges credibility is my favorite among Mr. Collins's analyses. The reason the Application section was omitted was that it made the policy "sound" like an indemnity policy. This is an incredibly naïve statement, totally irrelevant. What is not addressed is the fact that Hancock is committing a degree of fraud by unilaterally altering the original policy. The dishonesty, the self-dealing of Hancock is never alluded to; as usual, context is ignored.

From:Sean Collins (sean@neinsurancelaw.com)
To:nytomzito@att.net
Date:Tuesday, June 22, 2021, 04:47 PM PDT

Tom,

As Ive stated before: inflation protection is not incompatible with a reimbursement policy. At its core that is your argument and it is an argument that will not succeed. You are focusing on red herrings.

With that said, I'll tell you why they left out the application: because the application makes the policy sound like an indemnity policy, which is good for us.

It's not the inflation protection that is the issue for them, **it is that they described the benefit period in terms of 4 years instead of a sum of dollars, it is also that they described the "Daily Benefit" not as a "Maximum Daily Benefit"**..that is what gets them in trouble.

Sean

---

**From:** Thomas J. Zito <nytomzito@att.net>
**Sent:** Tuesday, June 22, 2021 7:40 PM
**To:** Sean Collins <Sean@Neinsurancelaw.com>
**Subject:** Categories

Sean:

What do you think Hancock called the Policy/Contract over a 15-year period when the valuation of the Daily Benefit was consistent with the 5% inflation protection? I will be

extreme and say: Who cares? The industry approach is invariably the same. It seems to

adopt a position whereby no one openly engages the concept of reimbursement vs. indemnity.

The dominant conceptiom of an indemnity comtract in the LTC field clusters around the fact

of who handles the money. When anyone elects an indemnity policy he/she has a contract

whereby the Insurer automatically pays the Insured the Daily Benefit and the Insured deals

Thomas J. Zito, pro se                    Attachment: 5C

                                          Case No._____

The attached email copy is important in its presenting a path for Hancock which will attribute no culpability or intentionality to their underpaying the insured. Here, there is a linguistic oversight.

The goal is to represent Hancock's "error" in such a way that the entire contract is retained. The "plot" here is to keep every element quite the same, so that Hancock can continue its fraudulent fleecing of customers.

Fw: Zito: Policy Number 07-9381316
From:Thomas J. Zito (nytomzito@att.net)
To:vmustelier@mintz.com
Date:Wednesday, April 28, 2021 at 05:19 PM PDT

Victor:

Saw this after I sent email to you regarding Sean's "threat" to run.

Tom

—— Forwarded Message ——
**From:** Sean Collins <sean@neinsurancelaw.com>
**To:** Victor Mustelier <vmustelier@mintz.com>; Thomas J. Zito <nytomzito@att.net>
**Sent:** Wednesday, April 28, 2021, 11:39:47 AM PDT
**Subject:** FW: Zito: Policy Number 07-9381316

CONFIDENTIAL COMMUNICATION

Tom and Victor,

See below. Gottlieb gave me an opening (after our call this morning) by asking if we planned to pursue the matter further so I went back at him. We'll see if he responds.

Sean

**From:** Sean Collins
**Sent:** Wednesday, April 28, 2021 1:21 PM
**To:** William A Gottlieb <WGottlieb@jhancock.com>
**Subject:** RE: Zito: Policy Number 07-9381316

CONFIDENTIAL SETTLEMENT COMMUNICATION

Yes we plan to pursue the matter. It seems that Hancock added the term "maximum" when describing the "daily maximum benefit" as early as 2002 to its template reimbursement policies. See GLTC-DIS(2002-2) for an example.

We view this language clarification, two years after Mrs. Zito purchased her policy, as a tacit admission that using the term "Daily Benefit" in a reimbursement policy (such as Mrs. Zito's) will cause confusion, thus lending further support to the argument that our interpretation is reasonable and thus the policy is ambiguous. As recently noted by a district court when ruling against LTC insurer CNA's motion to dismiss in a class action that I am currently involved in: "I conclude that on the record currently before me, the term "premium class" is ambiguous....Because there is more than one reasonable interpretation, the term is ambiguous.... Ambiguous contracts are construed against the insurer[.]" *Sieving v. Continental Cas. Co.*, April 26, 2021 order denying MTD, see attached.

If there is any appetite on Hancock's part for a pre-suit resolution of the indemnity/reimbursement issue let me know, I took from your previous response that there was no interest and have been proceeding accordingly.

Thank you,

Sean

Sean K. Collins

Law Offices of Sean K. Collins

184 High Street, Suite 503

Boston, MA 02110

**Thomas J. Zito, Pro Se**              **Attachment_____**
                                        **Case No._____**

In the attached email copy, Mr. Collins continues his tactic of agreeing with the Defendant. He makes the ~~odd statement that inflation protection isn't incompatible with a reimbursement~~ policy. How peculiar, like saying the world is a sphere. The importance of this matter inheres in the fact that the 5% compounded inflation protection increases the Daily Benefit in a manner that makes it appear as if annual increases are exponential.

This is Mr. Collins at his best, lying and assuming his audience is made up of a dunce, namely, me.

What challenges credibility is my favorite among Mr. Collins's analyses. The ~~reason the Application section was~~ omitted ~~was that it made the policy "sound" like an indemnity policy. This is an~~ incredibly ~~naive statement, totally irrelevant~~. What is not addressed is the fact that Hancock is committing a ~~degree of fraud~~ by unilaterally altering the original policy. The dishonesty, the self-dealing of Hancock is never alluded to; as usual, context is ignored.

RE: Categories
From:Sean Collins (sean@neinsurancelaw.com)
To:nytomzito@att.net
Date:Tuesday, June 22, 2021, 04:47 PM PDT

Tom,

As Ive stated before: inflation protection is not incompatible with a reimbursement policy. At its core that is your argument and it is an argument that will not succeed. You are focusing on red herrings.

With that said, I'll tell you why they left out the application: because the application makes the policy sound like an indemnity policy, which is good for us.

It's not the inflation protection that is the issue for them, **it is that they described the benefit period in terms of 4 years instead of a sum of dollars, it is also that they described the "Daily Benefit" not as a "Maximum Daily Benefit"**..that is what gets them in trouble.

Sean

**From:** Thomas J. Zito <nytomzito@att.net>
**Sent:** Tuesday, June 22, 2021 7:40 PM
**To:** Sean Collins <Sean@Neinsurancelaw.com>
**Subject:** Categories

Sean:

What do you think Hancock called the Policy/Contract over a 15-year period when the valuation of the Daily Benefit was consistent with the 5% inflation protection? I will be

extreme and say: Who cares? The industry approach is invariably the same. It seems to

adopt a position whereby no one openly engages the concept of reimbursement vs. indemnity.

The dominant conceptiom of an indemnity comtract in the LTC field clusters around the fact

of who handles the money. When anyone elects an indemnity policy he/she has a contract

whereby the insurer automatically pays the insured the Daily Benefit and the insured deals

**Thomas J. Zito**

**Attachment** 5 D

**Case No:**

**The copy of a single email from Mr. Gottlieb to Mr. Collins reveals a great deal of what's occurring.**

**Mr. Gottlieb doesn't bother himself with the seriousness of the "the Zito matter." He'll just suggest to his compliant friend, Mr. Collins, that it's just a nuisance, that the entire complaint should immediately die.**

**Mr. Gottlieb's posturing is a convincing reflection of his employer's view of the world. Do whatever you must to keep the bottom line salutary.**

f: (617) 227-2843

w: www.seankcollinslaw.com

CONFIDENTIALITY NOTICE: This communication may contain privileged and confidential information. It is intended only for the use of the recipient named above. If you are not the intended recipient of this communication, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail and permanently delete the original and any copy of this e-mail message and any printout thereof.

IRS CIRCULAR 230 DISCLOSURE: In compliance with the requirements imposed by the IRS, we hereby notify you that any U.S. tax advice contained in this communication, including any attachments hereto, is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** William A Gottlieb <WGottlieb@jhancock.com>
**Sent:** Wednesday, April 28, 2021 11:44 AM
**To:** Sean Collins <Sean@Neinsurancelaw.com>
**Subject:** RE: Zito: Policy Number 07-9381316

I will check with my business client regarding your request. Are you pursuing this matter further or is this the end of it? Please let me know. Thank you.

**William A. Gottlieb**
AVP & Associate Chief Counsel

U.S. Litigation, Alternative Dispute Resolution & Bankruptcy
**John Hancock**

**E**   WGottlieb@jhancock.com
**T**   617 572 9184
**M**  857 272 2848

**F**   617 572 5606

Executive Assistant – **Arnet Swain Harris**
**E**   ASwainHarris@jhancock.com
**T**   617 572 0855

197 Clarendon Street – C-05-31
Boston, MA 02116 USA



**Thomas J. Zito, Pro Se**          Attachment␣␣␣5 E␣␣␣␣␣␣␣␣␣

                                    Case No␣␣␣␣␣␣␣␣␣␣␣␣␣␣␣␣

**The attached copies of emails represent Mr. Collins's rejection of very effective and valuable evidence. Mr. Collins's approach is two-fold: He either rejects or ignores the following:**

- **The management booklet issued in 2014, which indicates the valid Daily Benefit (s), reflecting the 5% inflation protection**
- **The contract itself, which he identifies as a reimbursement policy. An outright lie.**
- **The Outline of Coverage, which he says just enhances the Defendant's position. Another lie. The Outline just reinforces my position. Another lie. He makes a statement without citing any facts which may support it.**
- **Hancock's complicity (illegal) with the NY State DFS. Mr. Collins generally just ignores this.**

**The overall mendacity is striking. What is even more striking is the belief that anyone buys into his claptrap.**
  -

John Hancock Booklet On Premium Increase
From:Thomas J. Zito (nytomzito@att.net)
To:sean@neinsurancelaw.com; vmustelier@mintz.com
Date:Wednesday, June 16, 2021 at 02:45 PM PDT

Sean & Victor:

The introductory salutation sounds as if I'm addressing some garment cutters.

More ~~important~~ I have in my hands a booklet, ~~sent to Renee, announcing an increase~~
in ~~premium from $199.54 to $353.16. It is~~ dated ~~December 15~~, 2014. I'm sure both of
you are aware of what's contained in such a document, viz., you (our valued customer)
can offset this premium increase in a number of different ways. You can cut the Daily Benefit, reduce the inflation protection,
etc.

Here is the good part. On page 3 (of 12) Hancock presents, in summary form, the principal
elements of Renee's benefits. I will provide this as follows:

        ~~Daily Benefit................$117~~
        Benefit Period...............4 years
        Elimination Period .......100 days
        Inflation Option..............5% Compound Inflation
        Optional Riders.............None
        Current Premium (Prior to Increase).......$199.54, monthly

The benefits are calculated as of February 21, 2015.

I have no extended commentary.  Hancock is calculating the Daily Benefit as  I've always
contended they should. Here it is. As John Mitchell, Nixon's AG during Watergate, said: This is the whole enchilada

I found this document in a dusty corner of Renee's files. Very eerie. And the irony is barbed.

I will get a copy of this to both of you.

Victor, please let me know where to send this.

Thank you.

                                                    Tom

**From:** Thomas J. Zito <nytomzito@att.net>
**Sent:** Tuesday, July 27, 2021 1:51 AM
**To:** Sean Collins <Sean@Neinsurancelaw.com>
**Subject:** Hancock

Sean:

You know about my various problems, so I'll not repeat them. Let's juat say that they add up

to expedience in resolvimg our issues with Hancock.

Much of what I have to say may sound redundant. I believe that the letter, sent to Renee in

2014, is the link which gives us irretutable grounds for our position, claiming fraudulence.

I use the last word just as an inclusive and generic term. As a layman, I would just say that

among many sins, breach of contract is my preferred choice. I know you think I overvalue

this letter as evidence. I really don't know why you have this appraisal. It would take a good deal to convince me otherwise.

To be reductive, Hancock management quite openly declares that the Daily Benefit is  projected to be $417.00 in February, 2015. This amount is shown in a table which describes

the Policy's basic elements. One of the latter is the election of the compounded 5% inflation

protection. To this arsenal, we can add an annotated (by us) and doctored contract submitted in support of Hancock's reimbursement theory.  As the old ballad queries: Who could ask for anything more? "More" could be the Contract/Policy itself. It is, in lawyer-speak, res ipsa loquitor. It speaks for itself. How can one question basic facts? One has to adopt the position that15 years of faithful execution of the policy suddenly becomes so much smoke. It's turning

down a serendipitous gift. Hancock is not even aware that we have this. So, it even has

tactical value if one chooses to utilize it in this mode.

It's my conviction that, when Hancock dropped the underwriting of LTC insurance in December, 2016. they had a systemic, very structured plan for cutting losses by making

their remaining  one million plus customers work very assiduously for anything. I'm convinced

that their primary position was to, in effect, deny coverage, to create an approach which

was very alarming to the insured and to the individuals, usually family, acting in their behalf.

I will have a comment on the Consumer Affairs company later. Here, I will just say that the

evaluation by customers of Hancock are excoriating. These reviews apparently (I would like to

an odorous version of the Policy. I'm sure Gottlieb (I still wonder if he has the "real" policy)

wants to assail me (verbally, of course) for frequently calling everyone quite stupid. With no

legal counsel, I just wanted to stay in the game. My "personna" with them was intentionally

nasty and arrogant. They were just stupid and desperate. I do not like these people. They

should be scuttled with their devious banners at half-staff. And if I'm really  nasty and arrogant, so be it. Personnly, I choose
to be right

It occurs to me to suggest an inquiry: What do you think Gottlieb's reaction to this document

would be?

What exactly did the doctored contract reflect in its five points of departure from the

real Contract? We can only have one response; the availibility of the inflation protection

selection. I'm not even considering the summary of benefits document. There is an

element of surprise, even to me, when they omit an entire section of the policy. This is

the Appliocation section. 12 pages left out. This goes beyond temerity. And they're pompous

about the reasons why they omit the Application. It's to protect the Insured. Someone

quite fiendish may try to cunningly acquire the informatio and take profitable advantage of them. Big Inurance....once more the
Protector.

They are cornered in a financial tree, and wh're about to help them down. The way I see it,

we hold the best hand at the table.

I've considered all you imparted to me in our long phone conversation. I regard the Booklet

as a treasure. It is just the cement for all contentions that have beem made. It describes

all the pieces as they begin to cohere into a whole..

I feel very strongly about this. If we regard it as only a marginal item, I think we're looking

a gift horse in the mouth.

If there are errors (technically speaking) in this email, they refflect  the elimination of

RE: Mailed Booklet
From:Sean Collins (sean@neinsurancelaw.com)
To:nytomzito@att.net
Date:Tuesday, June 22, 2021, 12:33 PM PDT

Tom,


I just got into the office and yes it is here, as is a check for $17,176.76.


The booklet is helpful but I think you are placing too much weight on it. Again, Hancock has never denied the fact that you have inflation protection, the issue is solely whether it is an indemnity policy or a reimbursement policy.


Sean

---

**From:** Thomas J. Zito <nytomzito@att.net>
**Sent:** Tuesday, June 22, 2021 3:31 PM
**To:** Sean Collins <Sean@Neinsurancelaw.com>
**Subject:** Mailed Booklet


Sean:


It you're tied up or out of town or on vacation, would you have someone in your office

let me know if this invaluable booklet has been received via mail.


Thanks.

Tom

Hancock's Outline of Coverage

From:Thomas J. Zito (nytomzito@att.net)
To:sean@neinsurancelaw.com
Date:Thursday, April 22, 2021 at 11:52 AM PDT
Sean:

In the Outline, on Page 9, is a simple statement:

COMPOUND INFLATION COVERAGE:

> "Your Daily Benefit(s) will increase by an amount equal to 5% of the
> Daily Benefit in effect during the prior Policy year. The annual increase
> is automatic and will occur on each Policy anniversary. The premium for
> Compound Inflation Coverage is included in the Policy premium Your premium
> will not change, except as described in the Policy."

I could not have expressed it so succinctly.

Also, if you look at the Policy itself, you'll find a number of pages that are signed
by Marianne Harrison. That would make her an adolescent CEO. I'm assuming
this was done because changes to the original Policy were made and they did not
want them attributed to the Corporate officers who signed off 20 years ago.

Tom

Hancock

From:Thomas J. Zito (mytomzito@att.net)
To:sean@neinsurancelaw.com
Date:Monday, June 21, 2021 at 02:20 PM PDT

Sean:

As I've said before, Hancock and related entities have (literally) no place to hide, no legitimate
defense againt myriad charges; The fee-increase booklet which outlines Hancock's actual
compliance with the 5% inflation protection endorsement FOR 15 YEARS is dispositive
evidence in this regard. I hope the language is correct here. But you know what I mean
When it became time tp pay, they reneged, very much outside the law..Let's not forget,
we have a doctored contract as wll. And more.

The greedy part of me says that Hanocck and Cuomo's group are on the cusp of a profound
scandal. Given all we know about this criminality and its effects if made public, what
would be unethical or in some way(s) illegal if we propose a settlement of several millions of
dollars for each of us? The prognosis of my longevity says I should be dead around this time.
I would not be averse to travel comfortably and die on a gondola in Venice

Hancock can buy our NDA's whose violation would demand the return of all "consulting"
fees, with you and I separate in this regard.  Whoever talks, loses.

If Hancock resists, I'd be happy to have a press conference. Or go to Letitia James.

I'm quite serious about this. It serves justice. Not to mention the two of us..You have a career
to protrct. All I have is a most charming little cat.

.

We would likely be the first successful individuals with respect to cornering Hancock
and the NYS Dept of Financial Services in their LTC sinfulness. They have to be quite
jittery at this point. I feel they really deserve it. They are arrogant swine. Excuse the
hubris.

                                        Tom

From:Sean Collins (sean@neinsurancelaw.com)
To:nytomzito@att.net
Date:Friday, July 30, 2021, 11:39 AM PDT

Tom,


See attached for a draft complaint. I still have some research to do on the proper parties, and formatting issues to work out. Please let me know your thoughts on the substance of the rest. The plan was to make super straightforward and simple, and position ourselves to survive a motion to dismiss.


We have discussed at length our differing views on the best argument in support of the indemnity theory. The inflation protection rider is not helpful in my opinion, in fact I think it hurts us because it references increasing the "Policy Limit" as does the 12 page rate increase letter from December of 2014…as you know the Policy Limit is written in terms of a dollar figure. This hurts our argument. Indemnity policies refer to the maximum benefit period in terms of years, this is why I like to focus on the original application.


Have you had any discussions with your nephew and updated any of your Trust and Estates paperwork?


I still have the $17k (approx.) of benefits in my client trust account that I am holding for you. Were you able to open a Trust bank account if not the Estate account using Renee's Will? I would like to get you these funds ASAP.


Thanks,


Sean


---

**From:** Thomas J. Zito <nytomzito@att.net>
**Sent:** Friday, July 30, 2021 1:38 AM
**To:** Sean Collins <Sean@Neinsurancelaw.com>
**Subject:** Re: Hancock


Sean:

**Thomas J. Zito, Pro Se**

**Attachment** 5 F

**Case No:**_____

**The attached email is, unfortunately, just one page of a major statement made by me to Mr. Collins after receipt of his draft of a Complaint. The entire email is very confrontational. The mutual back-rubbing of the two Defendants encapsulates their collusion quite well.**

**The entire email will be requested in Discovery.**

On Aug 9, 2021, at 9:26 PM, Thomas J. Zito <nytomzito@att.net> wrote:

Sean:

I would rather have done this by phone, the closest we have to a face-to-face.

I really am desperate about putting all of this behind me. It has stolen too much time from me, when I know I have not a great deal of time left.

I see no reason not to plunge ahead; this is it.

It's ironic that the last person I researched was Bill Gottlieb. I even read through his real estate interrogation. Didn't miss much. I knew how things were moving toward a climactic resolution. I never believed you would take my miniscule case as anything but a launching pad. Too much time wasted here as well.

There's so much to relate, but my recitation will be short.

It, of course, was one of Gottlieb's legal responsibilities to be the senior counsel for regulatory compliance. Here I was, assuming Bill was being euchered, when he had DFS as his go-to team. All came together for me. No great achievement. I should have anticipated
it.

A slight digression. Don't ever rely on Gottlieb's editing. The Complaint draft papers were a disgrace. Everything was in the footnights or compressed typeface. Too much to deal with, because everything was equivocation. Strange, obsessive cant with fixity and stasis the
only element to penetrate. Only the initial fixed limit of $200.00 alluded to. Reimbusement policies that somehow had no terminal point. Bill truly sounds unhinged.

The key certainly was the perfect way out for Hancock. Their crime was, of all things, miscalculating. They get their hand slapped; you get rewarded well, I assume. I get paid what's due me.

You made a couple of very questionable decisions in this matter. First of all, as an officer of the Court, you're obliged to report on the criminal arrangement between Hancock and DFS. Instead, you sleep with the enemy.

Your working with Gottlieb reveals a mutual back-rubbing. You rupture the fiducary bond between yourself and your client, namely, me.

I don't know if these factors constitute grounds for disbarment. I really don't want to go there.
I do, however, hear the clinking of silver coins.

You're fortunate, I think, in my just wanting out of all this.

Please don't reply just yet. I'd like you to tell Gottlieb what I want. Before we get into that, let me just tell you that I have a very long email which describes my journey among the

Attachment:_____

Thomas J. Zito, pro se                    Case No._____

The attached email copies relate to the problems of inactivity with respect
to goals and also to the issue of punitive damages.

The Defendant, Sean K. Collins, offered little with respect to these issues.

If I had known about the possibility of punitive damages, I would have directed
Mr. Collins to give this serious consideration. Clearly, there is every reason to
assume that this would be contrary to the approach over which both
Defendants were planning.

Mr. Gottlieb's seeming lack of awareness of "the Zito matter," we consider
highly disingenuous.

The August 9, 2021 email also reflects the tension of the situation and also
Alludes to the Hancock – NY state DFS arrangement.

This same email also functioned as a termination of our Agreement.

Concerns

From:Thomas J. Zito (nytomzito@att.net)
To:sean@neinsurancelaw.com
Date:Thursday, March 25, 2021 at 02:40 PM PDT
Sean:

*As you know, I have considerable investment in a successful outcome to our dealings with
Hancock/Manulife. I won't bore you with specifics.*

My major concern at this point in time is that we've spent seven months in our quest and, as far as I know, have made little progress. I say this with full awareness of the fact that, given
the conditions of our agreement, it would be self-deception to view my case as anything but
ancillary in your practice.

The last update I received from you indicated that Dan Nestle was passing this issue on
to one of his corporate attorneys. Having some substantial experience with the customary
rituals of the corporate world, I would think that Dan's action underscores the need to examine
the significance of this move.

First of all, it's highly unlikely that the corporate attorneys are not familiar with this matter.
Secondarily, in most situations, corporate attorneys don't make decisions. This suggests to
me that Dan's deflection is another piece of temporizing. The critical consideration/inference
is that there is no solution to our challenge. There is only the magical thinking that we'll
go away. They've tried it all, and each attempt to extricate themselves from this conundrum
within an enigma has failed. They have no legitimate defense, and thus the efforts to defend
themselves have been specious and, at their worst. criminal. Their collaborative efforts with Cuomo's regulatory group only
intensify the reality of bondage. They lie and deflect, with
inane "thinking." It is within the realm of the absurd that they ignore a contract and create a new landscape by playing an
irrelevant game of categorization. "This is not an indemnity Policy" becomes the red herring. I dealt with these people (insurer
and regulator) for months.
It's undeniable to me to say that the emotive shades bespeak only desperation.

Why would these predators trust us? With our demands for a Daily Benefit based on the
5% inflation factor, they're aware now of our real intentions. They've only paid me about
$25,000.00. so there's a small offset and they owe a not insignificant amount. The main
point is that we threaten them with exposure of systematic fraud, of their hand-in-glove
relation with Cuomo's regulatory group. If these factors didn't apply, they'd have paid us off
and been done with an irritating idiot (mainly, me.) We're a mote in their eyes. There's
a lot more at stake. With Cuomo inundated by his lecherous proclivities, the present moment
is also their weakest moment. They have to know that a deposition or two would be destructive. My choices would be Dan
Nestle and Franco the Consultant. I don't believe they
would ever let it get this far.

I've amplified my concerns more than I've intended.

Please let me know if what I've presented is, to a major degree, off the mark' You've had the
contact with the relevant parties and know a lot more than I do about current reactions to
our demands.

I've been through the periods of threats to cancel (they know they can't), of experiencing
the systematic structure of their fraudulence, of understanding the attempts to discourage
and deceive their existing customers, of paying the assisted living facility directly as if they
were the people Hancock had taken on as the Insured. I could, quite literally, continue.

What do we do? It's clear that the last thing Hancock/NYSDFS want is to enter a courtroom.
We can construct a possible scenario whereby we threaten to file suit (They've certainly
breached contract, acted in bad faith, et. al.). You know better than I about this aspect of the
situation). Why not punitive damages? As she was dying, Renee sobbed about the assumed
pressure that was brought to bear on me. I, indeed, was experiencing a goodly measure of

3/26/2021                                        AT&T Yahoo Mail - Confidential

were the people Hancock had taken on as the insured. I could, quite literally, continue.

What do we do? It's clear that the last thing Hancock/NYSDFS want is to enter a courtroom. We can construct a possible scenario whereby we threaten to file suit (They've certainly breached contract, acted in bad faith, et. al.). You know better than I about this aspect of the situation). Why not possible the damages? As she was dying, Renee sobbed about the assumed pressure that was brought to bear on me. I, indeed, was experiencing a goodly measure of frustration and anger.

You might have experienced a little lack of continuity in the above. As often happens with emails, transposition of paragraphs exists with regard to the foregoing. I don't think it interferes with comprehension.

Thank you. Stay well.

                                                              Tom

| | | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Thomas J. Zito. Pro Se
7065 Warbler Way
Sacramento, CA 95831

TELEPHONE NO.: 916 422 7105    FAX NO. *(Optional):*
E-MAIL ADDRESS *(Optional):* nytomzito@att.net
ATTORNEY FOR *(Name):*

SUPERIOR COURT OF CALIFORNIA, COUNTY OF FederalCourt,EasternDistrictofCA
STREET ADDRESS: 501 I Street
MAILING ADDRESS: same
CITY AND ZIP CODE: Sacramento, CA 95814
BRANCH NAME:

PLAINTIFF/PETITIONER: ZitoFamilyTrust

DEFENDANT/RESPONDENT: John Hancock Financial Services, Inc.

| CASE NUMBER: |
|---|
| 2:21-cv-02098-JAM-DB |

| JUDICIAL OFFICER: |
|---|
| M. York |

**NOTICE OF RELATED CASE**

| DEPT.: |
|---|
| Clerk of Court |

---

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1. a. Title: Zito Family Trust v. John Hancock Financial Services, Inc.

   b. Case number: 2:21-cv-02098-JAM-DB

   c. Court: [✔] same as above

      [ ] other state or federal court *(name and address):*

   d. Department: Clerk oF Court

   e. Case type: [ ] limited civil [✔] unlimited civil [ ] probate [ ] family law [ ] other *(specify):*

   f. Filing date: September 30, 2021

   g. Has this case been designated or determined as "complex?" [ ] Yes [✔] No

   h. Relationship of this case to the case referenced above *(check all that apply):*

      [ ] involves the same parties and is based on the same or similar claims.

      [ ] arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

      [ ] involves claims against, title to, possession of, or damages to the same property.

      [✔] is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

         [ ] Additional explanation is attached in attachment 1h

   i. Status of case:

      [✔] pending

      [ ] dismissed [ ] with [ ] without prejudice

      [ ] disposed of by judgment

2. a. Title:

   b. Case number:

   c. Court: [ ] same as above

      [ ] other state or federal court *(name and address):*

   d. Department:

**Page 1 of 3**

Form Approved for Optional Use
Judicial Council of California
CM-015 [Rev. July 1, 2007]

**NOTICE OF RELATED CASE**

Cal. Rules of Court, rule 3.300
· www.courtinfo.ca.gov

DEFENDANT/RESPONDENT: John Hancock Financial Services, Inc.

2. *(continued)*

   e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

   f. Filing date:

   g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

   h. Relationship of this case to the case referenced above *(check all that apply):*

      ☐ involves the same parties and is based on the same or similar claims.

      ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

      ☐ involves claims against, title to, possession of, or damages to the same property.

      ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

        ☐ Additional explanation is attached in attachment 2h

   i. Status of case:

      ☐ pending

      ☐ dismissed ☐ with ☐ without prejudice

      ☐ disposed of by judgment

3. a. Title:

   b. Case number:

   c. Court: ☐ same as above

      ☐ other state or federal court *(name and address):*

   d. Department:

   e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

   f. Filing date:

   g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

   h. Relationship of this case to the case referenced above *(check all that apply):*

      ☐ involves the same parties and is based on the same or similar claims.

      ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

      ☐ involves claims against, title to, possession of, or damages to the same property.

      ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

        ☐ Additional explanation is attached in attachment 3h

   i. Status of case:

      ☐ pending

      ☐ dismissed ☐ with ☐ without prejudice

      ☐ disposed of by judgment

4. ☐ Additional related cases are described in Attachment 4. Number of pages attached: _____

Date:

      January 3, 2023

      _____
      (TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

      ► _____
      (SIGNATURE OF PARTY OR ATTORNEY)

CM-015

| | CASE NUMBER: |
|---|---|
| PLAINTIFF/PETITIONER: ZitoFamilyTrust | |
| DEFENDANT/RESPONDENT: John Hancock Financial Services, Inc. | 2:21-cv-02098-JAM-DB |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF RELATED CASE

*(NOTE: You cannot serve the Notice of Related Case if you are a party in the action. The person who served the notice must complete this proof of service. The notice must be served on all known parties in each related action or proceeding.)*

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*

2. I served a copy of the *Notice of Related Case* by enclosing it in a sealed envelope with first-class postage fully prepaid and *(check one):*
   a. ☒ deposited the sealed envelope with the United States Postal Service.
   b. ☐ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Related Case* was mailed:
   a. on *(date):* 1\03\2023
   b. from *(city and state):*
      Sacramento, CA

4. The envelope was addressed and mailed as follows:
   a. Name of person served:
      Misty A.Murray Esq.
      Street address: 10100 Santa Monica Blvd
      City: Los Angeles
      State and zip code: California 90067

   c. Name of person served:
      Street address:
      City:
      State and zip code:

   b. Name of person served:
      Street address:
      City:
      State and zip code:

   d. Name of person served:
      Street address:
      City:
      State and zip code:

☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

Thomas J. Zito
_____
(TYPE OR PRINT NAME OF DECLARANT)

▶ _____
(SIGNATURE OF DECLARANT)